No. 40.—SESSIONS FAIRCLOTH, plaintiff in error, *vs.* BENJA-
MIN S. JORDAN, defendant in error.

[1.] A deed, in the name of A B, was proved, on the part of the plaintiff, by
the testimony of the subscribing witnesses. Then the defendant offered
A B as a witness to prove the deed a forgery. The plaintiff objected to
the admission of A B's testimony, upon the ground that it was "incompe-
tent" for the makers "to gainsay what the subscribing witnesses had
sworn." The Court over-ruled the objection: *Held*, that the Court did
right.

[2.] B makes a deed for a piece of land to C, and afterwards makes another
deed for the same piece of land to T. The younger deed is duly recorded—
the older not: *Held*, that T, the donee in the younger deed, is not estopped
from the right to say that B had not conveyed the land to C, the donee in the
older deed.

Ejectment, in Dougherty Superior Court. Tried before
Judge PERKINS, May Term, 1855.

This was an action brought by plaintiffs in error, against
defendant in error, for a lot of land, No. 316, in 2d dist. The
land was drawn by one John H. Baugh, and granted to him 2d
March, 1836. On 10th January, 1834, Baugh conveyed to
Carmichael, and this deed was recorded in the proper office,
24th December, 1836. A regular chain brought the title
down to plaintiffs. On 21st December, 1837, Baugh con-
veyed the same land to one Giles Tompkins, and his deed was
recorded in the proper office, September 5th, 1838. A reg-
ular chain brought the title down to defendant. All the
deeds "contained clauses of warranty, in full."

On the trial, plaintiff proved by witnesses the hand-writing
of the witnesses and the maker of the deed from Baugh to
Carmichael. Defendant offered Baugh's testimony to show
that this deed was a forgery. The Court admitted the evi-
dence, and plaintiff excepted.

Plaintiff's Counsel proposed to prove that defendant had
*actual* notice of plaintiff's title and claim, before he purchased.
The Court rejected this evidence, and plaintiff excepted.

The Court charged the Jury, that if the grant from the State had not issued at the time of the conveyance from Baugh to Carmichael, they must find for the defendant, unless there was evidence to show that the grant fees had been previously paid. To this decision, plaintiff's Counsel excepted.

On these exceptions error has been assigned.

E. H. PLATT, for plaintiff in error.

VASON & DAVIS; SULLIVAN, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was it right in the Court to admit Baugh's testimony?

[1.] The admission of this testimony was objected to, on only one ground, viz: "that it was in evidence that the subscribing witnesses had an actual existence, they having proved the existence of the deed, and the maker was incompetent to gainsay what the subscribing witnesses had sworn." And this was not a sufficient ground. (*Busby vs. Greenslate,* 1 *Str.* 445. *Lowe vs. Jolliffe,* 1 *W. Bl.* 365. *Jordaine vs. Lashbrooke,* 7 *T. R.* 608. 1 *Ph. Ev.* 48. 1 *Green. Ev.* §384.)

Was the charge of the Court right?

The charge was, that if the grant from the State had not issued at the time of the conveyance to Carmichael, the Jury must find for the defendant, unless there was evidence to show that the grant fees had been previously paid.

Instead of being this, the charge should, as the plaintiff insisted, have been this: that if Baugh executed the deed to Carmichael, the act divested Baugh of all legal and equitable title to the land; and the subsequent payment of the grant fees and issuing of the grant, inured to the benefit of Carmichael and those holding under him.

In this case, both parties claimed under the same person, Baugh, the drawer of the land; the defendant claiming, by

virtue of a younger deed, from Baugh, but one duly recorded, and one made after the issuing of the grant to Baugh; the plaintiff, by an older deed from Baugh, but one not duly recorded, and one made before the issuing of the grant.

Now, the charge of the Court was, in effect, that the defendant, who claimed under the younger deed, was not estopped from the right to insist that Baugh, at the time when he made the older deed, under which the plaintiff claimed, had no legal title to the land. And in this charge, we think the Court was right.

The doctrine of estoppel by deed—the doctrine that the donee in the younger of two deeds for the same land, made by the same donor, is estopped from insisting that the land was not, by the older deed, conveyed to the donee in that deed, is in direct conflict with much of the law contained in our Registry Acts. In those Acts, is to be found this rule : that a younger deed, if duly recorded, is to take precedence of an older deed, if not duly recorded. This rule is to be found in the earliest of those Acts : that of 1755, and, also, in one of the latest of them : that of 1837. (*Cobb's Dig.* 159, 175.) This rule, as to the cases that fall within it, is in direct conflict with the aforesaid doctrine of estoppel. And what cases fall within it? Cases in which the donor of the land owned the land at the time when he made the first of the two deeds; how much more, then, in cases in which the donor did not, at that time, own the land, but had come to own it at the time when he made the second deed?

[2.] We think it clear, therefore, under these Statutes, that an older deed not duly recorded, cannot operate as an estoppel upon a younger deed duly recorded. (*See Doe vs. Roe—decided at Augusta in* 1855.)

In this case, the estoppel, if one existed, would, in order to be of any service to the party insisting upon it, have to operate not merely as an estoppel proper, i. e. as a thing which "stoppeth or closeth up" one's "mouth, to allege or plead the truth," (*Coke Litt.* 352, *a.*) but as an actual *conveyance* from the donor to the donee, of the interest in the land acquired

by the donor, after the making of the deed; for the party insisting upon the estoppel, is the *plaintiff* in the ejectment, and the plaintiff in ejectment cannot recover, unless he shows title in himself; and in this case, the plaintiff cannot show title in himself, unless the estoppel be treated as a conveyance, and, as such, be made to convey the title into him; for his deed cannot convey the title into him, because that was executed before the maker of it had, himself, acquired any legal title to convey.

Now, speaking for myself, I must say, that I do not see how estoppel can be permitted to become a *conveyance* of lands so as to serve as the foundation of an action for the lands, in the face of these words of the fourth section of the Statute of Frauds : "no action shall be brought," "whereby to charge any person, upon any" "contract or sale of lands, tenements or hereditaments, or any interest in or concerning them," "unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party, to be charged therewith, or some other person thereunto by him, lawfully authorized."

Estoppel is a thing that is not in writing; and even suppose, in this case, that Baugh, at the time when he made the first of the two deeds, had verbally said to the donee, in that deed, "I have no title to this land, but I expect to get a title to it before long, and I now agree that this deed, which I have made to you, shall be an estoppel upon me, so as to prevent me, when I do get a title, from saying that the land is mine and not yours; and I further agree, that this estoppel shall be to you a conveyance to you of that title, as soon as I acquire the title." Is it not most clear, that upon this verbal agreement or promise of Baugh's, no action could be brought, "whereby, to charge" Baugh? But if the law be such, that a person cannot verbally make an agreement so as to render himself chargeable in a particular way, can it yet be said to be such, that it shall render him chargeable in that

very way, without the existence of so much even as a verbal agreement on his part, to be chargeable in that way?

It is also argued for the plaintiff in error, that even if the Court below was right in not telling the Jury that the land passed by estoppel from Baugh to Carmichael, the first of the two donees; yet, that the Court was wrong in not telling them that Baugh, by executing the deed to Carmichael, became a *trustee* of the land for Carmichael, and those claiming under him; and that if the deeds from Baugh to Commichael, and from Carmichael to Dennard, were recorded before Jordan purchased from Baugh, the record of those deeds was notice to Jordon, and he "purchased, subject to the trust;" and that, as against him, there was, by these means, produced in the plaintiff, "*a complete equity.*"

But it is not true, in the first place, that Baugh, by *executing the deed* to Carmichael, i. e. by conveying to Carmichael all the interest which, at time of the conveyance, he had in the land, became a *trustee* of the land for Carmichel? To be a trustee for another, one has to have the legal title in himself; and this he cannot have in himself, after he has conveyed it to another, as he does, when he conveys to another *all* his title. Baugh could not have become a trustee of this sort before the *grant* had been issued to him, if he could then.

And in the second place, the record, which has not been recorded in time, is not a legal notification of the existence of the deed to those who may, after the registry, take another deed.

The charge of the Court then was, as we think, right upon the facts of the case as they stood when the charge was made.

But the plaintiff complains that the facts of the case should, at that time, have been different, and would have been so, had not the Court improperly excluded some testimony, viz: the testimony of the Faircloths, Joshua and William, offered to prove that Jordan and Tompkins had, when they respectively

Faircloth vs. Jordan.

purchased the land, *actual* notice of the title of the plaintiff's lessors.

And for this complaint, the plaintiff relies upon the case of *Neal vs. Kerrs & Hope*, (4 *Ga. R.* 161.)

But that case was upon a money-rule against the Sheriffs; and Courts sitting on such cases, consider themselves to be sitting as Courts of Equity; and this Court, in that case, enforce what they admit to be only an *equitable* title. (*Ib.* 166.)

But this case is on an action of ejectment—a sort of action in which a title, merely equitable, is not of any use.

Besides, the question, whether under the Registry Acts of this State, a younger deed duly recorded, is to be postponed to an older deed not duly recorded, but of which the younger deed had *actual* notice, is a question, the solution of which, is more appropriate to a Court of Equity; a Court, that, be the decision which way it may, has power, on a proper state of pleadings, to compel the donee, in either deed, to make such a conveyance to the donee in the other, as shall leave it no longer doubtful, in which of the two donees is the full title.

I must say, too, that I cannot regard the case of *Neal vs. Kerrs & Hope*, as to me, a conclusive interpretation of the Registry Acts. The Act of 1755, closes its first section in these words : " In failure of which, all such as are lawfully and regularly registered, as aforesaid, shall be deemed, taken and construed to be prior, and shall take place and be recoverable in law, before any and every deed, conveyance or mortgage, which has not been lawfully registered as above—any law, custom or usage to the contrary, notwithstanding." It was not until 1837, that the case of a deed having "notice of a prior deed," was made an exception to this general rule, which gives a preference to deeds duly registered, over all others. Why was the exception put, expressly, in the Act of 1837, if it had already, impliedly, existed in similar acts? These deeds were both made before the Act of 1837, and that Act is not retroactive.

We see no sufficient reason to disturb the decisions of the Court below.