MARCUS D. DODD, Respondent, *v.* HENRY W. WILLIAMS *et al.*, Appellants.

### January 31, 1877.

1. Deeds recorded before the grantor has any record title may be safely disregarded in examinations of title under the system of registration and notice adopted in Missouri; they are not constructive notice to an innocent purchaser, and the examiner is not bound to look for deeds of any person through whom the title passes, before the date of his record title.

2. The doctrine of enurement and estoppel, that covenants of title in a deed operate to transfer the after-acquired title by mere operation of law, is not

to be enforced to the destruction of the protection to purchasers which it is the object of our laws for the registry of deeds to effect.

3. Where one makes a conveyance, with warranty, of land to which he has no title at the time, if he afterwards acquire the legal title, it shall not so enure to his grantee, by virtue of this warranty, that, not only the grantor and his heirs, but a subsequent grantee for a valuable consideration, is estopped from claiming the land, independent of all questions of registry or notice.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Kehr, Tittmann & Tittmann,* for appellants, cited : Chase *v.* Heaney, 7 C. L. N. 166 ; Watson *v.* Muirhead, 57 Pa. St. 161 ; Calder *v.* Chapman, 2 P. F. Smith, 359 ; Doswell *v.* Buchanan, 3 Leigh, 381 ; 2 Smith's Ld. Cas., 7th ed., 701 ; Chauvin *v.* Wagner, 18 Mo. 552 ; Gibson *v.* Chouteau, 39 Mo. 556 ; 1 Hill. on Mort., secs. 2, 3 ; Erskine *v.* Townsend, 2 Mass. 495 ; Woodruff *v.* Robb, 19 Ohio, 217 ; Collier *v.* Gamble, 10 Mo. 470 ; 2 Am. Law Reg. (N. S.) 655, and cases ; Bogy *v.* Shoab, 13 Mo. 379, 380 ; Frink *v.* Darst, 14 Ill. 308, 309 ; Clark *v.* Baker, 15 Cal. 612 ; Way *v.* Arnold, 18 Ga. 181 ; Faircloth *v.* Jordan, 18 Ga. 350 ; Gochenour *v.* Mowry, 33 Ill. 331.

*J. D. Johnson, H. B. Wilson,* and *Davis & Wilson,* for respondent, cited : Rawle on Cov. Tit. 410, 412, note 27 ; 3 Washb. on Real Prop., 3d ed., 102, side p. 475, and cases cited, p. 110, side p. 480 ; Cocker *v.* Prince, 31 Me. 177 ; McCusker *v.* McEvoy, 9 R. I. 528 ; Carver *v.* Jackson *ex dem.* Astor *et al.,* 4 Pet. 85, 86 ; Evans *v.* Labaddie, 10 Mo. 425 ; Jones *v.* Kearney, 1 Dr. & War. 159 ; Pierce *v.* Emery, 32 N. H. 484 ; Bailey *v.* Trustees, etc., 12 Mo. 175 ; Wag. Stat. 1351, sec. 3 ; Bogy *v.* Shoab, 13 Mo. 365 ; Jecko *v.* Hume, 45 Mo. 167 ; Clark *v.* Marshall, 39 Mo. 429 ; 2 Smith's Ld. Cas. 638, and cases cited ; Butcher *v.* Rogers, 60 Mo. 239.

BAKEWELL, J., delivered the opinion of the court.

On December 14, 1869, there was filed for record, in the proper office of St. Louis County, a deed of that date for

certain real estate in the city of St. Louis, made by William T. Mason and wife to a person named therein as trustee. This deed was to secure the payment of a promissory note therein described, and was in the form usual in this State for deeds of trust given to secure the payment of money, containing a provision that the deed should be void and the premises described released if the note was duly paid, and that the premises should be sold at public auction, on notice, if there was any default in payment of the note. The deed contained such covenants of warranty as are implied by the use of the words "grant, bargain, and sell."

At the date of the record of this deed there was nothing on record showing that the grantor, Mason, had any right, title, or interest in the premises described in it.

One year after the record of this deed, on December 15, 1870, a deed from Voorhis and Meyers to Mason, for the same property, dated June 4, 1870, was recorded.

On April 11, 1871, there was recorded a deed from Mason and wife to Daniel Cobb, for the same property, dated January 8, 1871. This deed was a warranty deed, and contained no mention whatever of the deed of trust for the same property previously executed by the grantor.

Afterwards the plaintiff, desiring to purchase the premises from Cobb, applied to defendants, who were then attorneys at law in St. Louis, engaged in the business of examining titles to real estate and furnishing abstracts of title, and making that business a specialty, for an abstract of title to the premises described in the deed from Mason to Cobb, showing all incumbrances and liens thereon. Defendants undertook to furnish the abstract, for which he paid them $50. The abstract is dated May 27, 1871, and by it defendants certify that, "as per the county records and the county index to said records, the title to the real estate in question was on that day good in Daniel Cobb, and that there was no incumbrance thereon, nor any lien thereon excepting for certain taxes therein specified." The amount

of taxes was small. The abstract makes no mention whatever of the dee 1 of trust given by Mason, and it is admitted by defendants that they were wholly ignorant of its existence. Relying upon this statement, the plaintiff, on the same day, purchased said premises from Cobb, paying him full value for them, and took a warranty deed from Cobb.

On April 2, 1874, the premises described in the deed of trust were sold by the trustee for non-payment of the note, and bought in by one Davis, acting for the plaintiff, Dodd, for the sum of $1,900, which is admitted to have been the lowest sum for which the premises could have been relieved of the alleged incumbrance; and this action is brought for that sum and interest, as the damages sustained by respondent by reason of the misfeasance of appellants in furnishing the abstract of title, which is said to have been incorrect in that it omitted all mention of this deed of trust.

The facts as above stated, so far as not admitted by the pleadings, were admitted at the trial.

The cause was tried before the court sitting as a jury. Several instructions were asked for defendants, which were all refused; but it is not necessary to set them out. There was a finding and judgment for plaintiff. It is claimed by defendants that, on this state of facts, the plaintiff was not entitled to recover.

The question to be determined in this case is whether the deed of trust in question was, at the date of the certificate of defendants, an incumbrance against the property described, appearing to be such by the records of the county. If it was so, it was the duty of defendants to note it. By their profession they are bound to have a sufficient knowledge of law to know what is and what is not a lien upon real estate in this county, and to use sufficient diligence to find any such incumbrance when properly made matter of record, so as to affect all parties interested with notice. It is not pretended that this deed of trust was not properly en-

tered on the indexes in the office of the recorder of deeds at the time it was filed for record.

An attorney is not liable to his client for a mere error of judgment. Especially is he not liable if he mistakes the law in a matter of difficulty where the law is not well settled. But where one who proposes to make a specialty of examining titles, in the course of his business, having been paid for his services, gives a certificate that he has made examination and finds no incumbrance against certain property, he will be liable if the incumbrance is of record in such a way as to give constructive notice to every one interested, and actual notice to every one looking for it in the proper way.

What is a lien upon real estate may be a difficult question, in some cases, to decide ; but an examiner of titles to real estate is bound to know the state of the law on the subject, at least sufficiently to put him on his guard ; and, where there may be a reasonable doubt as to whether such or such a recorded instrument is a lien, if he choose to resolve the doubt he does so at his own peril. If, for instance, it be possible that a deed given and recorded before the grantor has any record title can be good against a subsequent purchaser, without actual notice, of the same property from the same grantor, the examiner will be bound to look for all conveyances of every grantor in the chain of title, up to the time the title passes out of such grantor' or alienor ; and, if he fails to do so, and the party employing him is injured by this neglect, this is negligence for which the examiner of titles will be liable. If he does not choose to assume this liability, he may easily avoid it by noting in his certificate every question which arises upon the title as to which there can be the slightest doubt in the legal mind, or by giving a list of deeds and incumbrances, and abstaining from expressing any opinion as to their legal effect. In the case at bar, had the defendants said in their certificate, in effect, this : " It is maintained by some lawyers that a deed made before the alienor has the record title may affect the title of

the subsequent purchaser ; but we have not thought it necessary, in this case, to examine for deeds of any person through whom the title passes before the date of his record title," this would have been notice that the examination was imperfect on a recognized theory of the law of conveyances and the registration acts ; but they chose to certify that the title was good, in total ignorance of the existence of a deed, duly indexed and recorded, which, on the theory of plaintiff, was a lien upon the property they were employed to examine. If this deed was in fact a lien, they were clearly guilty of negligence, and are liable in this action.

There can be no doubt about the proposition that there is grave authority for the view that a deed recorded before the grantor has any record title may be safely disregarded in examinations of title, under the system of registration and notice adopted in the different States of the Union ; that it is not constructive notice to any innocent purchaser.

Speaking of a certain application of the doctrine of estoppel, so careful an author as Mr. Rawle, in the last edition of his work on Covenants of Title (Rawle on Cov. Tit., 4th ed., 428), says : " This leads to a position *which cannot, certainly, be considered as tenable,* that a purchaser must search the registry of deeds, not only from the time when his grantor acquired title, but also for a series of years before that time, in order to discover whether he had previously made any conveyance (though without title) to any other person."

" When a purchaser is examining his title in the registry of deeds," says Jackson, J., in *The State* v. *Bradish,* 14 Mass. 296, " and finds a good conveyance to his grantor, he is not expected to look further."

" Even if it were admitted to have been the duty of D. to search the records," says Potter, J., in his very able dissenting opinion in *McCusker* v. *McEvoy,* 10 R. I. 610, " how far ought that search be carried? Assuredly not beyond the period at which the legal title vested in the vendor."

And similar *dicta* may be cited from cases in New York, Georgia, Pennsylvania, Massachusetts, and other States. Now, as it is certain that a purchaser of land is affected with constructive notice of anything that lies within the course of his title, it follows that, whenever it is held that no examination of title need be made as to conveyances before record title in the grantor, it should, logically, be held that such deeds cannot affect the rights of innocent purchasers for value, and that the doctrine of enurement and estoppel which, in spite of the registration laws, has obtained in many of the States, and especially in New England, must be thrown aside.

That doctrine, as supported by a large class of cases in Maine, Massachusetts, Vermont, Rhode Island, Delaware, Kentucky, Ohio, Iowa, and perhaps in other States, is that the covenants of title in a deed create an estoppel which operates to transfer the after-acquired title by mere operation of law. This obligation, they say, binds the party making it and all persons privy to him; it adheres to the land, is transmitted with the estate, it becomes a muniment of title, and all who afterwards acquire the title take it subject to the burden which the existence of the fact imposes on it. It necessarily follows from this doctrine that deeds with covenants of warranty by one having no title, to one who records his deed, will give to such grantee precedence of right, if the grantor subsequently acquires a title to the estate, over a purchaser who takes a deed of the same estate from the same grantor without actual notice of such prior deed. This doctrine is spoken of by Mr. Washburn (3 Washb. on Real Prop. 118) as " probably too well settled to be now controverted; though it has been insisted that such a construction does violence to the spirit of the system of registration of deeds, which ordinarily requires that, in taking a title, one should only go back to the time his grantor acquired it, and to see that no intermediate incumbrance or conveyance shall have been made by him."

The doctrine, however, has met with much opposition, and is by no means universally accepted.

In Georgia, more than twenty years ago, it was decided that, under modern conveyances with or without warranty, title to land subsequently acquired does not pass to the grantee by estoppel, and it is queried whether the registration acts are not a repeal of the doctrine of estoppel. *Way* v. *Arnold,* 18 Ga. 181. And in *Faircloth* v. *Jordan,* 18 Ga. 352, it is said: " The doctrine of estoppel by deed, that the donee in the younger of two deeds for the same land, made by the same donor, is estopped from insisting that the land was not, by the older deed, conveyed to the donee in that deed, is in direct conflict with the registry acts, which provide that a younger deed, if duly recorded, is to take precedence of an older deed if not duly recorded. What cases fall within this rule?' Cases in which the donor of the land owned the land at the time when he made the first of the two deeds; how much more, then, in cases in which the donor did not at that time own the land, but had come to own it at the time when he made the second deed."

*Calder* v. *Chapman* was decided in Pennsylvania in 1866. 52 Pa. St. 359. Calder purchased an entire tract of land except one lot; he then mortgaged the whole tract, including the lot which he had not acquired; then a judgment was obtained against him, under which the lot was sold; then the whole tract was sold under the mortgage. It was held that the purchaser under the judgment acquired the lot. Judge Read, in delivering the opinion of the court, says : " It is said that, if a man sells and conveys land to which he has no right or title, and afterwards buys or acquires the title to the same land, he ' cannot claim it as against his grantee; and whether this rule is based on estoppel or rebutter, or upon the equity as practiced in Pennsylvania, by which that which ought to be done is considered as done, is perhaps immaterial, as the effects of our recording acts must be the same in either case. It is a doc-

trine, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only where in conscience and honesty he should not be allowed to speak. Now, in the present case, in searching for incumbrances on conveyances, the search against Calder would begin with his title from Chapman, and the search beyond would be against Chapman and those from whom he claimed; and a search against Calder during the same period would be considered an utter absurdity."

And in *Farmers' Loan and Trust Company* v. *Maltby*, 8 Paige, 361, it is expressly decided that a purchaser is not required to search for mortgages upon the premises purchased as against his grantor previous to the time such grantor obtained his title thereto.

In *Chew* v. *Barnet*, 11 Serg. & R. 392, Judge Gibson delivering the opinion, it is decided that, in case of a conveyance before the grantor has acquired the title, the legal estate is not transferred by the statute of uses, but the conveyance operates as an agreement which the grantee is entitled to have executed in chancery. But, of course, he would not be entitled to have it executed against a subsequent purchaser without notice, though this is not said in the opinion of the court.

" The strongest argument against permitting the covenants or recitals in a deed to extend beyond the person of the grantor to an estate which he does not hold at the time," says Judge Hare, in his learned notes to *Doe* v. *Oliver*, 1 Smith's Ld. Cas. 700, is that it necessarily tends to give a vendee who has been careless enough to buy what the vendor has not got to sell a preference over subsequent purchasers who have expended their money in good faith, and without being guilty of negligence. Such a result seems to be at variance with the recording acts of the country, which are generally held not to require an examination of the record prior to the period which the title conveyed

vested in the vendor. To allow a title to pass by a conveyance executed and recorded before it is acquired may, therefore, be a surprise on subsequent purchasers, against which it is not in their power to guard; and is contrary to the equity which is the chief aim of the doctrine of estoppel as moulded by the liberality of modern times. It is, therefore, more consistent with reason, as well as with principle, to treat deeds made by a grantor without title as creating an equity which, though binding as between the original parties, cannot be enforced against purchasers without notice. * * * The unmanageable character of estoppels founded solely on common law and technical grounds is a reason for not invoking their assistance in any case where it is not absolutely needed, and for confining the operation of deeds on after-acquired interest in land to the creation of an equity which will bind subsequent grantees with notice without endangering the title of a *bona-fide* purchaser."

To say that, where one who has no title sells with warranty, his after-acquired title shall inure to his grantee, so that not only the grantor and his heirs, but all his subsequent grantees, are estopped from claiming, irrespective of all questions of registry and notice, seems a most inequitable application of the doctrine of estoppel, and it is no wonder that in recent cases courts have shrunk from carrying the doctrine to such results.

In *Chauvin* v. *Wagner*, 18 Mo. 531, it is said by Judge Gamble that the words " grant, bargain, and sell," which, in Missouri, are express covenants for seizin against incumbrances and for further assurance, " do not operate, as the ancient common-law warranty, to transmit a subsequently-acquired title to the covenantee." It is true that that declaration was not necessary to the determination of the case. But there is no contrary ruling in this State, and in view of the present state of the law, and the tendency of modern decisions, we have little doubt as to how that court

would rule were the question directly before them; and that the doctrine of estoppel would not be so applied as to strike down the shield which it is the purpose of our Registry Act to extend over the innocent purchaser.

It is true that, in New England, the doctrine of estoppel has been rigorously applied in cases in which the attention of the court has been expressly called to its incompatibility with the spirit of the recording laws; but in many cases in other States, which are cited in support of the more rigorous rule, the attention of the court does not seem at all to have been directed to the question of notice; and in some of these cases there was actual notice, the first alienee being in possession of the premises at the time that the second purchaser took his deed.

In the very learned treatise of Mr. Rawle on the operation of covenants of title by way of estoppel or rebutter, contained in the fourth edition of his work on "Covenants of Title," the author considers especially the tendency of the more modern decisions. This chapter of his work has been completely re-written for the edition of 1873, and he thus sums up his very careful examination of the many hundreds of American cases bearing on this subject:

"1. The principle on which rests the doctrine that the after-acquired estate passes (viz., that a man's own act — his previous deed — closed up his mouth to allege the truth that no estate passed thereby) is, or at times may be, a salutary one, and is intended to carry out the real intention of the parties that a certain particular estate was to be conveyed and received; and, where that intention appears (by recitals, admissions, covenants, or otherwise), the law will not suffer the grantor to defeat it.

"2. Such an intention is generally to be deduced from the presence of covenants for title, and it is immaterial what particular covenants they may be, so that they show the intention.

"3. But the intention is not necessarily so deduced, and

may appear by other parts of the deed, where the question arises between the grantor and grantee.

" 4. In many cases, to prevent circuity of action, it may be innocently held that the estate actually passes.

" 5. But this should not be supposed to work injustice by depriving the grantee of his right of action — *i. e.*, his option to sue.

" 6. And the doctrine may often properly apply where there is no right of action.

" 7. But should never be applied against a purchaser without notice, for, where the equities are equal, the legal title shall prevail.

" That is to say, if traced to its source, the doctrine is just this : the first grantee has *an equity* to have the after-acquired estate conveyed to him. As applied in most of the American cases, the result is simply the enforcing this equity in a court of law ; but law follows equity, as equity follows the law, and the equitable doctrine that, when the equities are equal, the legal title shall prevail cannot be disregarded in a court of law enforcing equitable principles."

So, in *Gochenour* v. *Mowry*, 33 Ill. 331, the court says : " The subsequent titles acquired by the grantor will inure by estoppel to the benefit of the grantee, and this for the purpose of avoiding circuity of action ; and a subsequent purchaser from the mortgageor under his after-acquired title is also estopped, *if he had notice.*"

In *Great Falls Company* v. *Worster*, 15 N. H. 412, the court says the estoppel is good, not only against the grantor and his heirs, but against purchasers under him *with notice.*

Suppose, in the case before us, Mason, having the legal title to this property, had executed this deed of trust and it had not been recorded until after the deed to Cobb, and had then conveyed to Dodd by deed at once recorded ; unquestionably the mortgage would have been cut out. Is the title

under the mortgage better, then, because Mason had no title at all when he executed it ? This seems to be absurd.

The matter is not so settled by authority that we are not free to decide it upon its merits. It is truly said by Judge Potter, in his learned dissenting opinion in *McCusker* v. *McEvoy*, 10 R. I. 610 (1875), that, in ascertaining the weight of authority upon this point, we must leave out of consideration, first, all English cases, because they have no record system ; second, all American cases upon leases ; third, all American cases concerning only the grantor and his heirs ; fourth, all American cases where, though assigns were held bound, the question of the effect of the registry laws was not raised.

The old common-law doctrine of estoppel bound parties and privies, but applied only to fines, common recoveries, judgments, and feoffments which were of notoriety, and to leases where the possession of the lessee was notice, but they did not apply to conveyances under the statute of uses.

We think that Dodd was a purchaser without notice, and was not estopped from setting up his title against the purchaser under the deed of trust, who carelessly took a deed to property to which his grantor had no title, and of which he had no possession. The doctrine of estoppel is based entirely on equitable considerations, and was adopted with a view to the promotion of the ends of justice ; and it seems unjust to allow it to be so applied that, in a case where one makes a conveyance with warranty, of land to which he has no title at the time, if he afterwards acquires the legal title, it shall inure to his grantee by virtue of the warranty, and that, not only the grantor and his heirs, but a subsequent grantee for a valuable consideration is estopped from claiming the land, independent of all questions of registry or notice.

We think that Dodd was not bound to examine the records for conveyances of Mason prior to the date of his record title.

It follows that it does not appear that there was any incumbrance on this property not noted in the certificate of defendants ; and that plaintiff is not entitled to recover.

The judgment of the Circuit Court is reversed. All the judges concur.